[Civ. No. 12793. Third Dist. Jan. 22, 1971.]

DOUGLAS MORRIS, Plaintiff and Appellant, v.
IVY BAKER PRIEST, as Treasurer, etc., et al.,
Defendants and Respondents.

## COUNSEL

Dante John Nomellini for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Walter J. Wiesner, Deputy Attorney General, Richard W. Dickenson, County Counsel, George Herrington and Orrick, Herrington, Rowley & Sutcliffe for Defendants and Respondents.

## OPINION

**FRIEDMAN, J.**—At a special election consolidated with the primary election of June 2, 1970, the voters of the state approved an amendment to section 1, article XVI, of the state Constitution, authorizing the Legislature to increase the maximum annual interest rate on previously authorized but unsold state general obligation bonds and ratifying legislation[1] which increased from 5 to 7 percent the maximum annual interest rate payable on state general obligation bonds and which eliminated an existing 5 percent ceiling on the annual interest rate on bond sale anticipation notes.[2]

Shortly after the election plaintiff Morris, a state taxpayer, filed this action to enjoin the state Treasurer from selling general obligation bonds and anticipation notes at interest rates exceeding the former 5 percent limitation. The trial court sustained a general demurrer without leave to amend and entered a judgment of dismissal, from which plaintiff appeals.

Plaintiff's attack on the 1970 constitutional amendment has no substance; his claims of constitutional invalidity are baseless.

 First, plaintiff charges that the 1970 amendment violates the opening clause of article XVI, section 1 (fn. 2, *supra*) because it creates a new debt exceeding $300,000 and deals with multiple objects and works (i.e., the separate bond issues affected by it). The clause restricts statutory bond proposals adopted by the Legislature and submitted to the electors for approval. Neither expressly nor by any stretch of interpretation does it

---

[1]Government Code sections 16731, 16736, as amended by chapter 740, Statutes 1969. See also, Government Code section 16737, as amended by chapter 741, Statutes 1969.

[2]We set forth relevant provisions of article XVI, section 1, of the California Constitution, italicizing the new matter added by the amendment of June 2, 1970: "The Legislature shall not, in any manner create any debt or debts, liability or liabilities, which shall, singly or in the aggregate with any previous debts or liabilities, exceed the sum of three hundred thousand dollars ($300,000) . . . unless the same shall be authorized by law for some single object or work to be distinctly specified therein . . . but no such law shall take effect unless it has been passed by a two-thirds vote of all the members elected to each house of the Legislature and until, at a general election or at a direct primary, it shall have been submitted to the people and shall have received a majority of all the votes cast for and against it at such election. . . .

"*Notwithstanding any other provision of this constitution, or of any bond act to the contrary, if any general obligation bonds of the state heretofore or hereafter authorized by vote of the people have been offered for sale and not sold, the Legislature may raise the maximum rate of interest payable on all general obligation bonds authorized but not sold, whether or not such bonds have been offered for sale, by a statute passed by a two-thirds vote of all members elected to each house thereof.*

"*The provisions of Senate Bill No. 763 of the 1969 Regular Session, which authorize an increase of the state general obligation bond maximum interest rate from 5 percent to an amount not in excess of 7 percent and eliminate the maximum rate of interest payable on notes given in anticipation of the sale of such bonds, are hereby ratified.*"

inhibit the electors of the state in amending the state Constitution. Article XVI, section 1, does not prohibit its own amendment.

■ Second, plaintiff urges that the 1970 amendment was submitted to the electors in violation of article XVI, section 2(a), of the state Constitution.[3] Adopted in 1962, that provision prohibits any amendment to the Constitution providing "for the preparation, issuance and sale" of bonds and declares that such a measure shall be submitted to the electors in the form of a bond act or statute. Plaintiff invokes the general proposition that the state Constitution may be amended only in the mode provided by it. (*Oakland Paving Co.* v. *Hilton,* 69 Cal. 479, 489 [11 P. 3].) He argues that increases in the interest rates borne by separate bond issuances must be submitted to the electors as a series of separate bond acts or statutes.

The 1970 constitutional amendment is not a bond proposal. It does not provide for the preparation of bonds. It does not provide for the issuance of bonds. It does not provide for the sale of bonds. It is completely outside the ambit of article XVI, section 2(a).

■ Third, plaintiff charges a violation of article IV, section 12(d), of the state Constitution, which declares: "No bill except the budget bill may contain more than one item of appropriation, and that for one certain, expressed purpose." The argument is frivolous. Article IV of the state Constitution deals with the legislative department, and section 12(d) is limited to appropriations made by the Legislature. (See *Prince* v. *City & County of S. F.,* 48 Cal.2d 472, 475 [311 P.2d 544], reversed on other grounds *sub nom. Speiser* v. *Randall,* 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332].) Even when viewed as an implied appropriation, the 1970 amendment to article XVI, section 1, is outside the restrictions of article IV, section 12(d).

■ Finally, plaintiff fastens the complaint of subject-matter multiplicity to other constitutional doctrines. He charges denial of due process and deprivation of equal protection (in violation of the Fourteenth Amendment) because the voters were forced to accept a single proposal affecting separate bond issues and deprived of a separate choice as to each bond issue. While plaintiff has supplied no authority for his sweeping constitutional assertions, a case could conceivably arise in which the unrevealed

---

[3] Article XVI, section 2(a), provides: "No amendment to this Constitution which provides for the preparation, issuance and sale of bonds of the State of California shall hereafter be submitted to the electors, nor shall any such amendment to the Constitution hereafter submitted to or approved by the electors become effective for any purpose.

"Each measure providing for the preparation, issuance and sale of bonds of the State of California shall hereafter be submitted to the electors in the form of a bond act or statute."

side effects of a hydra-headed proposal might prevent an intelligent vote. (Cf. *McFadden* v. *Jordan,* 32 Cal.2d 330 [196 P.2d 787].) Here, we note, the official ballot pamphlet supplied by the Secretary of State before the election contained a variety of explanatory material, including pro and con arguments and a cost analysis by the Legislative Analyst. The latter enumerated the unsold bond issues, the unsold amount of each, fixed their aggregate at 1,300 million dollars and informed the voters that (on the basis of prevailing redemption schedules) a 1 percent increase in the interest rate would cost the taxpayers 315 million dollars. The central issue before the voters was not the individual bond issues but the additional burden of interest expense to be incurred by the state's general taxpayers. The issue and subject matter were essentially unitary. (See *Perry* v. *Jordan,* 34 Cal.2d 87, 91-93 [207 P.2d 47]; *City of Los Angeles* v. *Post War etc. Bd.,* 26 Cal.2d 101, 116-117 [156 P.2d 746].) Aside from its constitutional rootlessness, plaintiff's assumption of multiplicity of subject matter is intrinsically erroneous.

Judgment affirmed.

Pierce, P. J., and Janes, J., concurred.